May it please the Court, Stephen Golden appearing on behalf of Plaintiff and Appellant Sherrie Morgan. Your Honors, this is essentially a wrongful foreclosure case. My client suffered approximately a million dollars in loss of equity in her home, an eviction, loss of a tenant, income from that, and damage to her credit rating. We have court claims that we allege in a second amendment complaint, and breach of contract claims that would also go to the issue of whether or not there was a proper or a legal foreclosure here. That's been laid out in our appellant's opening brief. I'm not going to go into a lot of detail in that. On those issues, I want to discuss in light of EVA Nova, the standing issue which we were required to brief to this Court, a supplemental brief, and discuss how that impacts the issues in this case, which go under the rubric of standing and related issues. Now in the breach of contract claims that we allege in our first and second amendment complaint, Your Honors, we allege that there was in effect a cure of any default, assuming, of course, Aurora actually had the rights to be paid. They got assigned in 2010. The original loan was in 2007, and the deed of trust is Homefield Financial, but we'll get to that later. But if, in fact, there was agreement, and there were oral agreements, two oral agreements, two written agreements that you complete these terms, you make these payments. My client made months and months of payment, approximately $60,000 over a workout agreement, over a foreclosure alternative agreement, and was told on the phone repeatedly, finish the course, submit your financials, which she did. It's all alleged. You'll get a permanent modification. Okay. All sounds fine, but she went through this process, and on December 9, 2011, she's told on the phone, and she got a letter of the fact you're denied because there's an inverse relationship between the value of the property and your income. Counsel, let me ask you a couple questions here first. Yes, sir. You indicated that there was a phone conversation in which essentially she was promised if she made these payments, she could keep her home. Yes, sir. Is that actually alleged in one of the complaints? Yes, I believe it is, Your Honor. I believe it's in the second amendment complaint. Do you happen to know the paragraph that's in? No, I don't know. I don't have it. Okay. And my other question is that you put a lot of, my expression, eggs in the Corvello basket. There's this case, Corvello, and you point to it for support. Right. In Corvello, there was specific language, because I think it was under a different plan, that is not, I don't see it present in the agreements here. If you have, I think it's called, is it called the WAG? Workout agreement, yes. Yes, if you have that in front of you, or the excerpts of record. Well, the. . . If you could turn to page 211 of the excerpts of record. Let's see. Yes, Your Honor. Great. So at the top of page 211, there's language that says, and this is, I understand, the agreement between Ms. Morgan and Aurora, the WAG. Tender of the sixth plan payment shall not be deemed acceptance by Aurora Loan Services of a workout plan or loan modification. That's at the top of the page. And then the next sentence, which looks like paragraph B, the aggregate plan payment will be insufficient to pay the arrearage. Now, Corvello had the language that it did, and I understand why the panel went the way that it did. But this case, unless you can point me to something, doesn't have that language. Instead, it has, it seemed to me, the opposite language. Yes, Your Honor. There's a language going both ways in this particular agreement. We would like to and try to bring in the oral agreement that she was told to on the phone to interpret this agreement. It's not barred by the parole evidence. And that in itself is an oral contract, promissory estoppel. So even if the Court concludes that looking at this agreement, that it has language that would be an out, the fact is the oral promises made, she fulfilled the terms. So I think that should be. Point to me in the record where this oral promise was made for a permanent loan modification. Where is that? Your Honor, I don't have that before me. I was directing most of my time towards the issue of the standing. Well, but it seems like that's critical, too, because that's the only basis that you're saying, that there would have been a permanent loan modification. What I can, I'm trying to look through here what you're trying to argue, and it seems like the crux of your argument here and the complaint is that Aurora promised Miss Morgan that she would receive a permanent loan modification if she successfully completed a temporary payment arrangement. That's what you're trying to say? If she effectively made the payments that were specified. But I don't see where in the complaint it identifies any contract term or oral statement in which Aurora actually made this promise. I don't have that before me. I mean, the best I could see was in the third amended complaint, paragraph 23, it says prior to entering the workout agreement, the Aurora representative orally informed Miss Morgan that she needed to enter into a workout agreement in order to receive a permanent loan modification. But that's in the third amended complaint. That's not exactly what you're saying now. What you're saying now is a step further than that. So where do we find the oral statement alleged? I know you mentioned the second amended complaint, but you can't point us to anything there. No, right here I'm not ready to prepare to do that. I apologize, Your Honor. Okay. It's going to be in the crux of my time to address the standing issue. All right, well, let's talk about the standing issue then, because it seems like the Second Circuit has said under the New York law, assigning a note after a trust's closing date renders the assignment voidable instead of void. And if that's an accurate reading of the New York law, I'm just trying to figure out how you have standing. Well, Your Honor, again, there's lots of questions as to the opaqueness of MERS and what happened here. Yes, we did allege that there was the note that was transferred to the trust, a Lehman trust, and that the deed of trust never did make it. And we do cite the fact that there's a New York law in the complaint. Right now, Your Honor, I really don't know. There has to be discovery in this case to find out really whether or not there was a legal effect of transfer of anything to the trust. Okay? MERS reports this to the Securities Exchange website via Edgars. We pull the information that there was a note transferred to the trust. No deed of trust. Whether New York law applies or any other walk applies, as we point out in our brief, that has to be determined later on in the proceedings to address specific issues. Were there valid funds? Was there even effectively delivered? Was there an endorsement to the trust legally? And whether or not there's a choice of law provision in that trust, that would apply. Which state applies? Does California law apply to the original note and transfers to a party? Those decisions or those issues have to be determined later on in the proceedings. And as we point out in our brief, I got the excerpt here. I didn't quote it, but the sixth exhibit to the request for judicial notice in support of the motion to dismiss the Second Amendment complaint purports to, in 2010, MERS to assign over to Aurora. My client had been making payments to Aurora way before that. How is my client in the fault? Taking it on the face. And I take nothing on the face that MERS did. And I would direct this Court to an early decision that talks about all the opaqueness and arguably fraudulent nature of MERS and its whole securitization process because they don't report the assignments in their public records. And that is the case this Court had, Robinson v. American Home Mortgage Servicing, 754-Fed 3rd-772. And there is an opaqueness. And we don't know what, in fact. I allege a plausible theory that how on earth does the loan, 2007, Home Field Financial, three years later, while my client's making payments to Aurora, now they get the deed of trust by MERS, the so-called beneficiary of the deed of trust. They own nothing. Go on the website. They own nothing. How are they assigning anything? There is a chain of title issue. That is something that Ivanova said that plaintiffs could raise to state a claim for wrongful foreclosure. And that's laid out in that opinion. And let me just read it. How much time do I have? I just want to read a little bit of this case. The collapse in 2008 of the housing bubble and accompanying system of a home loan securitization led, among other things, to a great wave of loan defaults and foreclosures. One key issue arising out of the collapse was whether and how a defaulting homeowner could challenge the validity of a chain of assignments. We have a couple involved in the securitization of their homes. Now, we're not de facto saying everything MERS does is illegal. We need to find out if, in fact, Homefill transferred it to anyone. We allege a plausible theory, splitting of the note, the deed of trust, because later on they're purporting to assign the deed of trust to Aurora, who initiated the foreclosure, along with MERS, how they have any rights to be paid. They're not the beneficial interest holder of the deed of trust. That is long cocked wheel. The California case going decades, cited in the Ivanova case, said that that's been longstanding law in California and recently enunciated the policy in Civil Code section 2924A6. No entity shall initiate foreclosure unless it owns the beneficial interest in the deed of trust. Beneficial interest, the right to be paid. My client's paying Aurora for years, and then before it ever got the note and deed of trust, that MERS purportedly, on behalf of a beneficiary, claims it's a beneficiary, claims a nominee for the lender, and then the same deed of trust says it's a beneficiary. They're not getting paid. You can't accept this value then, but then 2010 assigns it for purpose of foreclosure of the client's property, claiming default. How's my client in default? Home mortgage should be the one that's claiming default. They weren't involved. It's an insane system. The court has noted. But I'm just having trouble understanding. Are you arguing that the defect Ms. Morgan is alleging would render the assignment void instead of voidable? Tell me again why. MERS is claiming a beneficiary. Under the assignment, it claims to be a beneficiary. They're not. They don't have the right to be paid. That's 2010. When you say beneficiary of a deed of trust, and that's the language of the policy of the state, 2924A6, only the person has a beneficial interest in the deed of trust. They have to have the right to be paid. My client contracts with Home Financial, and then Aurora comes on. They don't have anything. If they have it to 2010, at least from the records that defendants presented in the corporate assignment in their request for judicial notice in support of motion to dismiss. So MERS has nothing. They admit. You go to the website. It's a public record. MERS admits they own nothing. Mortgage electronic registration service. They have numbers on a computer. They transfer nothing. But assuming the fact they transferred the note to a trust, is a trust even legally authorized? We can trust nothing of MERS. And a plaintiff ought to have the opportunity to question MERS, to do some discovery. In fact, was anything ever transferred? And what was transferred in 2010, which purportedly you're claiming you're transferring to Aurora? And they've already been collecting payments. Say I'm in default. Years before they started the notice of default. All this is insane. And plaintiff ought to have the right to go in and do some discovery, and especially in light of Ivanova case that just came down, that held that on a post-foreclosure case, you can claim that the foreclosure was illegal based upon a void assignment. If MERS had nothing, they could assign nothing. I mean, that should be a principle we all recognize. Void. I can't give you something that I don't know. It's void from admissio. What am I missing here? Well, you've got 30 seconds left. All right. I'll say 30 seconds. Okay. I didn't have a chance to get into this. Okay. Thank you. Good morning, Your Honors, and may it please the Court. My name is Melissa Smith Morris, and I'm here today on behalf of Aurora Loan Services and Mortgage Electronic Registration Systems, Inc. As opposing counsel recognized, this case evolves around two central allegations. The first are with respect to written and oral statements regarding Ms. Morgan's attempts to modify her loan, and the second relate to Aurora's ability to foreclose on the loan. Here, Ms. Morgan has alleged no facts that would support any of her claims. With respect to her claims related to the loan modification, as Your Honor mentioned earlier, nowhere in any of the complaints does Ms. Morgan allege Aurora Loan Services promised her a loan modification if she made the payments under the workout agreements. Well, what was the purpose of entering into these workout agreements or the FAA? It seems if permanent loan modification was only a possibility, why would any homeowner agree to enter into them? The purpose is twofold, Your Honor. The first is to allow the borrower to demonstrate to Aurora Loan Services that it is able to make payments under the loan. That would allow Aurora Loan Services to also review the borrower for a loan modification. The second purpose is to give the borrower additional time on the property in order to modify the loan, if possible. So here, Aurora Loan Services initiated the foreclosure, followed the notice of default in 2008. The foreclosure didn't occur until December 2011. Ms. Morgan was given the benefit of the extra time on the property in an attempt to qualify for a loan modification, but ultimately she did not. And why did Aurora reject Ms. Morgan's July 2011 payment? Aurora, at first, again, two reasons. The first is that Ms. Morgan, by her own allegations, did not make all of the payments under the foreclosure of witness agreement. In her second amended complaint and in her third amended complaint, Ms. Morgan alleges that she had made three out of the four payments that were due as of June 1st. And therefore, Aurora was entitled under Paragraph 6 of that foreclosure of witness agreement to reject the payment. The second is that Ms. Morgan ultimately did not qualify for a loan modification, which Aurora communicated to Ms. Morgan on July 4th, or excuse me, July 6th, which was two days after Aurora rejected the fifth payment under the foreclosure of witness agreement. And ultimately, because she did not qualify, they did not continue to accept her payments under that agreement. Similarly, which is... Was she referred to the third payment as her fourth payment? Is that what happened? It appears that. So as of July 5th, July would have been her fifth payment under the plan, and she alleges she had only made three of those four prior payments. It's not clear from the allegations which of the payments she did not make. But does that mean it was late? Because it seemed like that's why they were saying it was late, but I'm not sure that it was late. Well, and that would have been the fifth payment. So if Aurora had accepted the July payment, she would have only made four of the five payments that had been due to date by her own allegations. And so because Ms. Morgan had not made five of the five payments, Aurora did not accept her July payment. In addition to the fact that she was ultimately declined for a loan modification, which would make... Even if Aurora had breached that agreement by failing to accept her payment, the breach wouldn't have been material where she ultimately would not have qualified for a loan modification. In fact, she was, I guess, spared the hassle of having to make a sixth payment where that payment would not have ultimately led to a loan modification. And with respect to the remainder of Ms. Morgan's claims with respect to the loan modification, Ms. Morgan consistently alleges in her complaints that she was promised to be considered for a loan modification, that Aurora agreed to consider her for one if she entered into the workout agreement and the foreclosure of witness agreement. Ms. Morgan's own allegations show that over the course of a year plus, she was routinely considered for a loan modification, but she was not ultimately accepted for a loan modification that she was ultimately denied. Then Aurora proceeded to foreclosure sale as it was permitted to do. With respect to the second issue, as for Aurora standing to foreclose on the promissory note, excuse me, the deed of trust, under EVANOVA, this court's only required to permit Ms. Morgan to challenge the assignment as void, which she does. However, just because she's able to challenge the assignment does not necessarily render that assignment void. Here she's alleged no facts that show MERS was not entitled to assign its own beneficial interest to Aurora. Contrary to opposing counsel's statements, MERS was the express beneficiary of the deed of trust. A line of California cases, including the Gomes decision, uphold MERS' right to assign its own beneficial interest in the promissory note to any party. In this case, it was Aurora, and that assignment was executed, I believe, in 2011 or 2010. Are you saying that we can make that determination, or do we have to remand this case back to the district court to determine, in the first instance, whether or not the alleged defect in the assignment rendered it void or voidable? You are able to make that decision, Your Honor, based on the record on appeal. The assignment is proffered for this court. The only challenges to that assignment are that MERS was not entitled to make that assignment. Here, under California case law, under the Gomes decision, MERS does have the right to assign its own beneficial interest. This court is able to review that assignment and uphold the district court's decision on alternate grounds, given that the district court did rely on purported lack of standing. That assignment, as mentioned, is not void for those reasons. Even though Ms. Morgan's ultimate position is that it is, she has alleged no facts to show that it is. Similarly, with any of the other documents that underlie the foreclosure sale, Ms. Morgan also did not allege any defects with those documents that would render the foreclosure itself void. At best, Ms. Morgan has alleged that the notice of trustee sale was not posted, that was not in any of her complaints, that was only in her opening brief, and even there, such a defect would render the sale voidable at best as a procedural defect, but Ms. Morgan was not prejudiced by that in any way, because she ultimately was aware of the foreclosure sale, had time to challenge that sale, chose not to do so. Unless the court has any further questions. Thank you, counsel. Thank you. Thank you. Your Honor, much of the discussion was factual that you're talking about whether or what MERS had whatever right. You can't point to a recorded document and take the, it's true, the contents that are there in that document. They're the lender of the beneficiary, and they're the, or I should say, nominee of the beneficiary, and then they're also the beneficiary. You can't take that, and then on the original deed of trust, and then on the corporate assignments. Oh, gee, there it is. We're going to take as fact that that's what happened. It is a question of fact. Again, you have original home field lender. How did it get years later to whomever and have the authority to foreclose? That's even over. We're entitled to challenge that. They're taking facts as proven that's written on an assignment by MERS, which this court had said essentially a criminal enterprise. Why would we do that? We're disputing that they ever had the right beneficial, the right to get paid, and could assign to anyone. They cannot do that. The note was split from the deed of trust. As we allege, we need to go into and discover what happened, and maybe this case will be settled and resolved. Your Honor, thank you. Thank you, counsel. Case disargued will be submitted.
judges: Reinhardt, Murguia, Owens